Good morning, your honors. May it please the court. I would like to reserve a couple minutes of my time for rebuttal, if I may. Okay, yeah. The first matter that I would like to address, that I think is crucial to the case, is the I-130 petition that has been filed for the respondent, or for, pardon me, for the respondent. Your honors, the petitioner is married to a U.S. citizen who's filed an I-130. Based upon that filing, the petitioner has filed a motion to the court to request that the court refer the case to mediation, which would hopefully give time for the USCIS to process the I-130. Now, certainly this would be the most case, especially if the I-130 is approved, the court would be able to remand the case. So how long has the I-130 been pending? I believe the I-130 was filed in September, your honors, and so... And when was the marriage? I don't recall exactly when the marriage was, obviously, prior to the I-130 being filed. But if the case is referred to mediation, then that would hopefully give time for the I-130 to be processed. The reason this is particularly important is because under the previous administration, particularly at the court level, the government was happy, even anxious, to grant a prosecutorial discretion to allow the administratively close the case, which the court in virtually every instance did, except if there was a criminal problem or some other reason that would prohibit that. But the court would always allow the I-130 to be processed, and the court would give ample, extensive time for that to be done. That was done under the previous administration. Under the current administration, that no longer exists. The government is not allowed to offer prosecutorial discretion. Yes, I get that. Well, if we refer this to mediation and don't want to mediate, it's not going to help anyway. Well... We can't make them mediate. I understand that, but this would certainly be the most economic way for the court to resolve the case. Do you want to argue the case? I'm sorry? Do you want to argue the case? Yes, I will proceed to argue the case. I think you've got some stuff to work with here, so let's get on with it. I mean, in a good way, so go for it. All right. In regard to the issues before the court, the board's decision is not supported by substantial evidence. The case, there's two causes of action in the underlying case. The first is a forced abortion. The court, the immigration court, and incidentally, the board at the BIA level essentially just adopted the immigration court's decision because there was no opposition. The government did not file an opposition at the BIA level. Therefore, theoretically, it could be said that the government has waived its right to... Let me get down to brass tacks on the abortion claim. As far as I can tell, the only thing the IJ had to support the adverse credibility finding was the notation on the medical form, zero with a line drawn through it. Was there anything else? Nothing else. The judge didn't question the testimony. The judge didn't question the lack of evidence. And what the judge did was purely speculation. The judge said, oh, well, when she went to get her IUD removed, she should have put the forced abortion on the medical information. And when asked about this, the petitioner said, oh, it happened 20 years ago. I didn't, you know, it happened in China. I didn't think... I don't think she said 20 years ago, although that was true. She said it happened in China. Okay. Well, there was an issue about 20 years. But she said it happened in China. I didn't think that... I only wanted to just get my IUD removed. And it wasn't relevant to anything that was happening at that time? No. And it was purely speculation on the part of the immigration judge. And therefore, it's purely speculation on the part of the board. That can't be... Is there any suggestion that she wrote that? The government's brief suggests that she wrote that. The government says she listed none. Well, it sounds as though the government's saying that she wrote that. That's impossible. That's a medical form. Yeah. Now, you didn't write the brief, but I'm going to ask you a few things about the brief. If I may, Your Honors, to continue. So there's essentially nothing really valid legally or factually to support the judge's finding regarding the forced abortion. It was pure speculation on the part of the immigration judge. If you take a look at the second cause of action, which was an imputed political opinion based upon the petitioner's arrest, beating, and subsequent detention for 15 days, and then she had to report after that, there was a great deal of persecution involved when she was beaten. She was beaten for five whole days. The court made two findings in regard to the imputed political... First, they said there wasn't enough nexus, and that, Your Honors, doesn't make any sense either. The government, in support of their argument, they referred to the Barajas case, but the Barajas case says the applicant must establish that race, religion, nationality, membership in a particular particle group or political opinion was or will be at least one central reason for the persecution. And perhaps the most important fact was when the police arrested her, they accused her of being a troublemaker, of organizing a riot to go against social order and against the communist government. They didn't say the second. They said the first. Does that matter? Well, there's an implication, Your Honor. Government represents social order. Anything that goes against social order is against the government. There is clearly a political opinion here. The police made that clear, and they extensively persecuted the petitioner. To say that there's no nexus doesn't make any sense. And the IJ made no adverse credibility finding with respect to this protest. The BIA says some things that suggest adverse credibility finding, but what am I supposed to do with the IJ saying, well, excuse me, with the BIA writing, well, she didn't mention this until the third time. What am I supposed to do with that? I believe that the underlying testimony, Your Honor, very substantially supports the petitioner's position. Am I supposed to conclude that the BIA did not make an adverse credibility finding? Or can the BIA make an adverse credibility finding if the IJ has not? Well, theoretically, the BIA can say whatever they want, but also theoretically, they're limited to the record on the case. But more than that, they realized that they couldn't because they had to give her an opportunity to explain it, and they didn't. And it hadn't been done. So on the current record, there couldn't be an adverse credibility finding. Therefore, Your Honors, both causes of action are validly before the court, and both causes of action have valid reason to support a petitioner's claim. If I may, Your Honor, I'd like to reserve my remaining time for rebuttal. That's fine. So we'll reserve it. We'll make sure you have enough chance to respond. Thank you, Your Honor. Good morning, Your Honors. Linda Doe for the Respondent and the United States Attorney General. In this immigration case, Ms. Lee sets forth two independent claims in support of her bid for political asylum. On the abortion claim, give us your best argument about why there's enough evidence to support the adverse credibility finding. Regards to Ms. Lee's claim, she affirmatively testifies and sets forth in her 2006 and 2007 declarations that she had undergone what she described as an extremely painful abortion surgery. Okay. Well, first of all, it was by translation. We don't really know if she used the word surgery, but the translating was terrible. But go ahead. It was put up in her 2006 and 2007 declarations. But so what? I mean, first of all, she didn't write that form. Regarding the actual form, the medical documents, it would still be based on what she had conveyed to the doctor. Well, no, it's based on what he interpreted. If she had said, I had an abortion and he didn't consider that a surgery, as I think most doctors would not, he would put zero, right? In regards to the record, the medical records, it shows that she informed the doctor that she wanted the IUD removed, that the IUD had been inserted 20 years prior in China. It's the same procedure in which she had undergone the forcible abortion. It's highly relevant when it's the same circumstance in which the IUD had been inserted. And do you think that if you ask most American women who had an abortion, say 95% of them, whether they'd had surgery, they would say they had surgery? I believe that most women in the United States, when they have a surgery, they disclose how prior... No, when they have an abortion. When they want to be pregnant again, and it's relevant to their possibly becoming pregnant again, I believe they would. And it's relevant... Oh, you're not answering the question. Please answer the question. Would they describe an abortion as a surgery? That's the question. If somebody asked you if you had a surgery, and 20 years before you had an abortion, would you write down that you had surgery? I believe I would, Your Honor. Do you think 95% of people would? I can't speak to that, Your Honor. I don't think so. I do believe that they would disclose prior pregnancies, prior abortions. She indicated that she had... If they asked for a prior pregnancy, you'd have a better case. But they didn't ask for a prior pregnancy. Well, that abortion goes to that prior pregnancy as well, Your Honor. I know. Does it say prior pregnancy on that form? It's uncertain. It's unclear. Well, what it asks for is OB history. And then there's something I don't understand, but I think I'm guessing what it means. There looks like a symbol for female, and then some for first and only child. But I can't quite translate. I can't quite figure out what the doctor or doctor's assistant meant. But that's there for OB history. Yes. And a subsequent pregnancy following that would also be relevant in regarding the OB history. But you see, the trouble is, we weren't there to know what questions were asked of her. We don't know how they were asked. We don't know the degree to which there might have been someone in the room translating or not translating. The only thing that we have is this 1-0 with a line drawn through it. That's pretty slender stuff. Your Honor, she doesn't deny that representation in her testimony when confronted with it. Doesn't deny what representation? That she didn't inform the doctor of her prior abortion. No, she didn't. She said that she didn't inform him that it was a surgery. No, at AR-168, Your Honor, when questioned about it, she said, no, no, I had not had any prior surgeries at that time. I was thinking about having my IUD removed. Right. So she said she told him it wasn't a surgery. She didn't tell him about an abortion or that he asked about an abortion or anything like that. But at 125 through 126, at 171 through 174, she repeatedly states that she had an abortion surgery. When questioned whether her abortion was a surgery, she repeatedly says yes. Hold on, hold on. You're giving me page citations and then you're saying stuff. Let's look at the pages you're talking about. What pages are you talking about? 125 and 126, Your Honor. Okay, so it's AR-125, 126. I believe it's through 171. Okay, I'm on those pages. So what are we looking at? I believe she describes the abortion and... You're sure it's 125 and 126? You're looking at a different pagination than I am. You're looking at the transcript pages, not the AR pages, I think. Is that right? Possibly. Oh, yes. Sorry, Your Honor. Yes. Okay, so I'm on transcript pages 125, 126. So what am I looking at? She specifically describes it as an abortion surgery. Where are you... What line are you looking at? Sorry. It's not on 125. Oh, I'm so sorry, Your Honor. I misstated. It is 146. 126? 146. 146. And we're talking about, again, the transcript page, not the AR. Now we're on AR page. And now we're talking about the AR. Now we're doing AR pages? Okay. Okay. Apologies. Okay, so now what am I looking at? The surgery... Okay, I do see here at the top of 146, I was ordered then to go to have an abortion surgery. Yes. Okay. And that's the translator who says that? Yes, Your Honor. That's a very odd way. If you were an ordinary English speaker, you would never say an abortion surgery. You would say, I had an abortion.  Yes, Your Honor. Okay. Okay. Okay. Okay. Okay. Okay. Which is also a translation. Her 2006 and 2007 declarations as well. Also translations. Yes. Okay. Yeah. I mean, counsel, normally when we have cases like this, there's like a dead bang. You know, I came, I worked in this factory in 2002, and then there's a document showing she still worked there in 2012. And you go, well, that's pretty tough. I'm not seeing anything like that here. So if you could imagine this as a closing argument summation. What is the, wow, the lie that has to convince us to say, you know what, you're right, and she clearly was lying. What is that lie? I would believe that it's the fact, the circumstances in which this entry unit advice was placed. I don't think she established that it's been forcible, that it was as a result of having violated China's one-child policy, as well as the fact that it had occurred at the same procedure in which she had a forcible abortion. Let me ask you something. If she hadn't had the abortion and she had just had the IUD put in forcibly, would that be enough? Or involuntarily? Because, I mean, that seems pretty obvious. I mean, she came to the United States, and right after she gets here, she gets the IUD taken out, which certainly suggests to you that you don't want it there. Well, Your Honor, she hasn't necessarily established that it was forcible. I mean, it would be based on whether her testimony was credible. Does that be forcible, or does it have to be involuntary? We do know, from what the doctor says, that when the IUD was taken out here, that that IUD had been in for about 20 years. So I'll take that as established quite clearly, because that's not her testimony. That's the doctor's testimony. And also the question was whether the IUD was in – she has indicated that she had two IUDs. The second one was being a violation of the one-child policy. She hasn't necessarily established that she had actually had a second IUD, as well as the abortion. Well, she says that, and if you don't believe her, you don't believe her, but she says she had two IUDs. Let me ask you a different question, and this is about the brief, which I gather you did not write, is that correct?  I'm at the top of page six of the government's brief, which I'll call your brief, and I understand you didn't write it. Line one of page six. I'll wait for you to get there. Are you there? Yes. Lee initially stated that she had the baby, but she quickly recanted and stated that officials subjected her to a forced abortion. Whoever wrote that brief, are they reading the same transcript I'm reading? Did she ever say she had the baby, the second baby? I think there was a brief indication that she had a baby. What she said was that she was happy because she was able to have the baby, and she said yes. She says, I have the ability. I have the ability. She was very precise about it. I mean, I had the same reaction to the brief. I mean, it kept saying that she said things she didn't say. She didn't say that she had the baby. She said she had the ability to have the baby, and then she was really sad because she couldn't have the baby. They didn't let her have the baby. And they interpreted it as saying that her uterus fell out. She didn't say that. I mean, it was just going on and on like that. I've got another question also in the brief, and I understand, again, you didn't write it. You may want to have a conversation with the person who did write it. I'm now at the bottom of page 18 and then over to the top of page 19 of the red brief. I'll wait for you to get there. Yes. I'm starting on the last line of page 18. Yes. The brief writes, yet on the portion of the form that solicited prior surgeries, Lee listed none. That sounds as though she's doing the writing, but of course she's not. But I think that it means that she had delineated or expressed none. Yeah, but it says Lee listed none. And then it says Lee wrote zero with a line through it. In the parenthetical. In the parenthetical. This is irresponsible brief writing, because if she actually wrote that, that's a stronger case against her. If she said she had the baby and then changed her story to say she didn't have the baby, that's against her. Neither one of those things is remotely supported by the record. I would believe that she still represented her medical history to the doctor. I appreciate you trying to stick up for a colleague here, but she didn't write it. It says wrote. It could be one thing. After receiving information from Lee, the intake form said this. That would be more accurate than say she wrote it. She didn't write it. Is there anything to recognize that she did? I'm not certain, Your Honor. Well, I mean, so I think maybe going forward, this is one where you say, having been a former government lawyer, you say, you know what? We blew it. You're right. We'll get it right next time. We recently got a commendable communication in another immigration case where one of the attorneys in the same situation as you with a brief they didn't write wrote us and said what was wrong with the brief. And they were right. So it would be nice to do that before the argument so we don't spend time at the argument doing this. I appreciate the comment, Your Honor. If there are no further questions, the government rests on its briefs. Well, I have one more question, which is on the other issue. We have this recent case about protest against eminent domain where we said that can be imputed political opinion where the government says you're anti-government. So I'm wondering what the difference is between, is there a fundamental difference between this protest, which in form was quite similar, i.e. people sitting in front of a government office, and that kind of a protest? Is the difference that the government didn't say you're anti-government, they just said you're anti-social? Or is the difference, and is that enough of a difference? Or is the difference between eminent domain and not paying severance pay or what? What's the difference there? In this case, Your Honor, Ms. Lee didn't allege any wrongdoing by her employer. And the record does not clearly establish whether... It doesn't establish any wrongdoing by her employer? They said she stopped, they promised to pay... Had been receiving subsidy laid-off payments  You mean she didn't allege any corruption or anything? Yes, she did not allege any corruption or wrongful termination by her employer. And it is unclear from this record that her employer had been state-owned. She had not necessarily established the requisite causal connection between the government and any harm that she actually suffered. No, I thought it was the government. I thought she was sitting in front of the municipal government office. Because the trouble is, this is China. So if they're not paying you, it's ultimately the government. And weren't they sitting in front of the government office? She was, Your Honor. She admitted that she had been blocking traffic, that it was a busy street at 8 a.m. in the morning. But wasn't that all true in the other case? I'm now forgetting. And that the difference was not what they were doing, but why they were doing it? I believe you're referring to Hu V. Holder, Your Honor. Right. 652 F. 3rd, 1011. In that case, he had admitted to being quietly demonstrating outside the gates. It's unclear whether he had been blocking traffic. He did admit to not requesting a permit in advance. He also further alleged that he had written two letters to the government and informed them of his belief that their failure to stop corruption at his state-owned factory is what led to him and 100 others being laid off. And they also further failed to pay any of the severance payments that they had promised. Also, that demonstration occurred close in time to the termination of his employment. So to me, that kind of renders that he had established a nexus between the government officials and his employer and his political opinion and speech. He thereafter was charged with not only social disruption, but with having an anti-government, anti-communist position. And again, establishing that it was on account of a political opinion or one that had been imputed to him. Here, Ms. Lee wasn't charged with having an anti-government or anti-communist opinion. She was charged with social disruption. And here, there is evidence supporting a legitimate prosecutorial motive in support of those charges. I believe that substantial evidence supports the agency's decision that she had not established the requisite nexus to a protected ground. And it supports its denial of asylum and withholding in CAT. If there are no further questions, Your Honor? Okay, thank you. Now, you sought to save some time. Let's put a minute on the clock. Okay. I'll try to be very brief. In regard to the imputed political opinion, which, Your Honor Bergeron, you very, you reached the issue. Government is making a distinction without a difference. I mean, the two cases are very, very similar to say that there is imputed political opinion in one situation and is not imputed political situation in the other is purely a subjective call. But really, it's a distinction without a difference. They're roughly equal. She was accused of organizing against social order and being a troublemaker. Those things are against the government. In regard to the forced abortion, Your Honor Owens, you ask a very candid and specific question. What is the lie? There is no lie. The whole issue that the judge went on was the judge's own speculation that of what may or may not happened at the doctor's office and what should have happened in the judge's opinion, which was purely speculation on the part of the judge. That's no valid basis to make a decision on. Both of these causes of action should be held in favor of the petitioner. And petitioner would request that the government do that or that the court would do that. Okay. Thank you very much. Thank you, Your Honor. Thank both sides for their arguments. Lee v. Sessions now submitted for decision.
judges: W. Fletcher, Berzon, Owens